UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

NATHANIEL R. COLLINS,

                              Plaintiff,

              v.

CUNNINGHAM, C/O,
HOGANCAMP, C/O,
G. MILES, C/O,
WANGER, SGT.,
MR. CHAPMAN, C/O,
HILLMAN, C/O, and
ESTATE OF GARY MILES,

                              Defendants.

**DECISION
and
ORDER**

**06-CV-420F
(consent)**

_____

APPEARANCES:        NATHANIEL R. COLLINS, *Pro Se*
00-A-0780
Attica Correctional Facility
Box 149
Attica, New York 14011

ANDREW M. CUOMO
Attorney General, State of New York
Attorney for Defendants
GEORGE MICHAEL ZIMMERMANN
Assistant Attorney General, of Counsel
Main Place Tower, Suite 300A
350 Main Street
Buffalo, New York 14202

## **JURISDICTION**

On July 9, 2007, the parties to this action consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned. The matter is presently before the court on Plaintiff's motion for summary judgment (Doc. No. 50), filed October 26, 2007, and Defendants' motion for summary judgment (Doc. No. 51), filed October 30, 2007.

**BACKGROUND**

On July 27, 2006, Plaintiff Nathaniel R. Collins ("Plaintiff"), proceeding *pro se*, commenced this civil rights action pursuant to 42 U.S.C. § 1983, alleging that on March 29, 2004, while incarcerated at Elmira Correctional Facility ("Elmira" or "the correctional facility"), Defendants New York State Department of Correctional Services ("DOCS") Officers Cunningham ("Cunningham"), Hogancamp ("Hogancamp"), G. Miles ("Miles"), Mr. Chapman ("Chapman"), and Hillman ("Hillman") (together, "Defendant Corrections Officers"), subjected Plaintiff to excessive force in violation of the Eighth Amendment's prohibition against cruel and unusual punishment. Plaintiff further asserts Defendant DOCS Sergeant Wanger ("Wagner"),[1] as the superior officer in charge of the Defendant Corrections Officers, failed to intervene to protect Plaintiff from the alleged excessive force.

An answer was filed by Defendants Chapman, Hillman, Hogancamp, and Wagner on September 6, 2006 (Doc. No. 11). By order filed January 31, 2007 (Doc. No. 23), the Estate of Gary Miles was substituted for Defendant Miles. On February 27, 2007, an answer to the Complaint was filed by Cunningham and the Estate of Gary Miles (Doc. No. 27). By stipulation and order filed July 30, 2007 (Doc. No. 45), the action was voluntarily discontinued as against Hillman.

On October 26, 2007, Plaintiff filed a motion seeking summary judgment (Doc. No. 50) ("Plaintiff's motion"), supported by the attached Declaration of Nathaniel R. Collins ("Plaintiff's Declaration"), Statement of Undisputed Facts ("Plaintiff's Facts

---

[1] Plaintiff's misspells Wagner's name in the Complaint as "Wanger."

Statement"), exhibits consisting of portions of Plaintiff's medical records, and a Memorandum of Law ("Plaintiff's Memorandum"). On October 30, 2007, Defendant filed a motion seeking summary judgment (Doc. No. 51) ("Defendants' motion"), supported by a Memorandum of Law (Doc. No. 52) ("Defendants' Memorandum"), a Statement of Facts (Doc. No. 53) ("Defendants' Facts Statement"), and the Declarations of DOCS Inmate Grievance Program ("IGP") Officer at Elmira, Gary A. Materne ("Materne") (Doc. No. 54) ("Materne Declaration"), and DOCS Inmate Grievance Program Supervisor ("IGPS") at Collins Correctional Facility, David LaGraves ("LaGraves") (Doc. No. 55) ("LaGraves Declaration").[2]

In opposition to Defendants' motion, Plaintiff filed on November 9, 2007, a response (Doc. No. 58) ("Plaintiff's Response"), with exhibits 1 and 2 ("Plaintiffs' Response Exh(s). __"). In opposition to Plaintiff's motion and in further support of Defendants' motion, Defendants filed on January 23, 2008, the Declarations of Assistant Attorney General Kim S. Murphy ("Murphy") (Doc. No. 61) ("Murphy Declaration"), and Defendant Wagner (Doc. No. 62) ("Wagner Declaration"), and Defendants' Response to Plaintiff's Statement of Facts (Doc. No. 63) ("Response to Plaintiff's Facts Statement"). On March 7, 2008, Plaintiff filed Responses to the Murphy Declaration (Doc. No. 64) ("Plaintiff's Response to Murphy Declaration"), and the Wagner Declaration (Doc. No. 65) (Plaintiff's Response to Wagner Declaration"). Oral argument was deemed unnecessary.

Based on the following, Plaintiff's motion is DENIED; Defendants' motion is

---

[2] The court notes the same LaGraves Declaration was docketed both as Doc. No. 55 and as Doc. No. 56.

GRANTED. The Clerk of the Court is directed to close the file.

# **FACTS**[3]

According to an Inmate Misbehavior Report ("First Misbehavior Report"),[4] on March 24, 2009, at 6:10 P.M., Plaintiff, then incarcerated at Elmira Correctional Facility, was involved in an incident ("the incident") in which Plaintiff repeatedly refused to obey several direct orders from corrections officers. First Misbehavior Report. In particular, Plaintiff, after receiving his evening dose of medication, proceeded toward the correctional facility's "slop sink" for water. *Id*. Because more than 20 other inmates were "awaiting medical showers," Defendant Cunningham gave three direct orders for Plaintiff to obtain water from the water "spicket" [*sic*] rather than from the slop sink, but Plaintiff refused each direct order. *Id*. After Plaintiff ignored Cunningham's third order, Cunningham approached Plaintiff at the slop sink, turned off the water and directed Plaintiff to "lock in," but Plaintiff did not move. *Id*. Cunningham gave Plaintiff two more orders to lock in and Plaintiff responded to the third order by walking past Cunningham, shoving his right shoulder into Cunningham's chest, causing Cunningham to step backward. *Id*. Cunningham again ordered Plaintiff to lock in, and Plaintiff then complied. *Id*. Cunningham then issued the First Misbehavior Report regarding the incident, charging Plaintiff with refusing to obey direct orders, interference, refusal to lock-in, violent conduct and assault. First Misbehavior Report. Following the incident,

---

[3] The facts are taken from the pleadings and motion papers filed in this action.

[4] A copy of the First Misbehavior Report is attached as Exhibit A to the Wagner Declaration.

4

Defendant Wagner was instructed to supervise Plaintiff's escort to the correctional facility's Special Housing Unit ("SHU"), pending a disciplinary hearing on the First Misbehavior Report. Wagner Declaration ¶¶ 3-4.

According to a second Inmate Misbehavior Report ("Second Misbehavior Report"),[5] while being escorted to SHU by Defendant Miles and another correctional officer not named in this action, Plaintiff attempted to pull away from Miles, ignored several direct orders from Miles to stop resisting, and spun around, hitting his head on a wall while trying to run from Miles. Second Misbehavior Report; Wagner Declaration ¶ 4. As a result of Plaintiff's resistance to the escort, Miles placed Plaintiff in a body hold. *Id*. Miles's left arm was broken during the melee. Second Misbehavior Report. The Second Misbehavior Report charges Plaintiff with disobeying a direct order, physical interference, and violent conduct. *Id*.

Whether Plaintiff filed a grievance relative to the March 29, 2004 incident is disputed by the parties. In particular, Plaintiff alleges he filed a grievance, which was denied and that the Grievance Officer came to Plaintiff's cell and threatened Plaintiff not to file another grievance. Complaint at 5. Plaintiff maintains he appealed the denial but that the appeal was "forward[ed] back to Elmira" as Plaintiff had been transferred to Collins Correctional Facility ("Collins"). *Id*. Plaintiff wrote several letters concerning the grievance, including an April 30, 2004 letter to then Elmira IGP Supervisor Sheryl Graubard requesting, pursuant to New York Freedom of Information Law ("FOIL

---

[5] A copy of the Second Misbehavior Report is attached as Exhibit B to the Wagner Declaration.

Request"),[6] a copy of "Grievance Dated March 20, 29, 2004." FOIL Request. By letter dated May 21, 2004 ("May 21, 2004 response"),[7] Graubard stated that no grievances were on file for Plaintiff for either March 20 or 29, 2004.

On June 3, 2004, Plaintiff, then incarcerated at Collins, filed an Inmate Grievance Complaint # COL II-12067-04 ("June 3, 2004 grievance"),[8] asserting Plaintiff had received no responses to grievances Plaintiff submitted on March 20 and 29, 2004 at Elmira, and the subsequent FOIL request pertaining to the March 20 and 29, 2004 grievances. On June 10, 2004, the Inmate Grievance Review Committee ("IGRC") responded that Plaintiff's requests had already been addressed by Graubard's May 21, 2004 response. June 3, 2004 grievance. Although the June 3, 2004 grievance indicates that on June 14, 2004, Plaintiff disagreed with the decision, Plaintiff did not appeal the decision and the matter was closed on June 24, 2004. *Id*.

On October 6, 2004, Plaintiff requested assistance from the Inspector General's Officer, providing a copy of an unsigned inmate grievance complaint dated March 20, 2004 ("March 20, 2004 grievance"),[9] to which no inmate grievance code or number had been assigned, in which Plaintiff complains that on March 20, 2004, Cunningham denied Plaintiff the opportunity to shower, and on March 29, 2004, Cunningham used vulgar language in directing Plaintiff to obtain water from the spigot rather than from the slop sink. The March 20, 2004 grievance is not signed by Plaintiff.

---

[6] A copy of the FOIL Request is attached as Exhibit B to the Materne Declaration.

[7] A copy of the May 21, 2004 letter is attached as Exhibit B to the Materne Declaration.

[8] A copy of the June 3, 2004 grievance is attached as Exhibit A to the LaGraves Declaration.

[9] A copy of the March 20, 2004 grievance is attached as Exhibit C to the Materne Declaration.

**DISCUSSION**

Summary judgment of a claim or defense will be granted when a moving party demonstrates that there are no genuine issues as to any material fact and that a moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) and (b); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986); *Rattner v. Netburn*, 930 F.2d 204, 209 (2d Cir. 1991). The party moving for summary judgment bears the burden of establishing the nonexistence of any genuine issue of material fact and if there is any evidence in the record based upon any source from which a reasonable inference in the non-moving party's favor may be drawn, a moving party cannot obtain a summary judgment. *Celotex*, 477 U.S. at 322. Once a party moving for summary judgment has made a properly supported showing of the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor. *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995).

Vague assertions supported only by self-serving statements in the nonmoving party's affidavit are insufficient to defeat a properly supported summary judgment motion. *Coniglio v. Highwood Services, Inc.*, 495 F.2d 1286, 1292 (2d Cir.), *cert. denied*, 419 U.S. 1022 (1974). "The non-moving party may not rely on conclusory assertions or unsubstantiated speculation [to defeat summary judgment]." *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998). Rather, "the non-movant must produce <u>specific</u> <u>facts</u> indicating that a genuine factual issue exists." *Wright v. Coughlin*, 132 F.3d 133, 137 (2d Cir. 1998) (underlining added). The ultimate inquiry on a summary

judgment motion is whether any reasonable jury could find the plaintiff's evidence meets the requisite burden of proof. *Amnesty America v. Town of West Hartford*, 361 F.3d 113, 122-23 (2d Cir. 2004).

Defendants are alleged to have violated Plaintiff's civil rights under 42 U.S.C. § 1983, pursuant to which an individual may seek damages against any person who, under color of state law, subjects such individual to the deprivation of any rights, privileges, or immunities protected by the Constitution or laws of the United States. 42 U.S.C. § 1983. Section 1983, however, "'is not itself a source of a substantive rights,' but merely provides 'a method for vindication of federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)). Thus, "[t]he first step in any such claim is to identify the specific constitutional right allegedly infringed." *Id.* (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989); and *Baker*, 443 U.S. at 140). In the instant case, the Complaint alleges Defendants violated of Plaintiff's First and Eighth Amendment rights when, on March 24, 2009, Defendants assaulted Plaintiff and then threatened Plaintiff with more violence should Plaintiff file any grievance regarding the assault.

Plaintiff seeks summary judgment on claims not presented in the Complaint,[10] including that following the March 29, 2004 incident, Plaintiff was wrongly confined for

---

[10] The court notes that Plaintiff, without explanation, refers to his motion both as seeking "summary judgment" and "partial summary judgment." *Compare* "Notice of Motion for Summary Judgment" (Doc. No. 50), with attached "Motion for Partial Summary Judgment," and Plaintiff's "Declaration in Support of Plaintiff [*sic*] Motion for Partial Summary Judgment." As the court is granting summary judgment in favor of Defendants based on Plaintiff's failure to exhaust administrative remedies, however, the question of whether Plaintiff's motion seeks summary judgment of all his claims, including his claims properly asserted in the Complaint and the newly asserted claims in Plaintiff's Memorandum, or whether Plaintiff seeks summary judgment only as against certain Defendants, is academic, and thus is not addressed.

four months in the correctional facility's Special Housing Unit, Plaintiff's Declaration ¶¶ 1 and 2; that Plaintiff was the subject of alleged false misbehavior reports, *id.* ¶¶ 3 and 5, and that Defendants failed to follow proper procedures at the disciplinary hearing on the alleged false misbehavior reports, *id.* ¶ 4. Defendants oppose Plaintiff's motion and move for summary judgment on the ground that Plaintiff has failed to exhaust administrative remedies. Because the record establishes that Plaintiff has failed to exhaust administrative remedies for his claims, the merits of Plaintiff's claims are not addressed.

Under the PLRA, exhaustion of all available administrative remedies is required before a § 1983 civil rights action challenging prison conditions, including excessive force and prison grievance claims, may be commenced. 28 U.S.C. § 1997e; *Macias v. Zenk*, 495 F.3d 37, 40 (2d Cir. 2007) ("'the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'" (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)). In New York, DOCS provides a three-step review process which an inmate must exhaust prior to commencing a § 1983 action. *Reyes v. Punzal*, 206 F.Supp.2d 431, 432 (W.D.N.Y. 20002).

Specifically, the grievance must first be submitted to the prison's Inmate Grievance Review Committee ("the IGRC"), comprised of both inmates and DOCS employees. *Reyes*, 206 F.Supp.2d at 432. If the IGRC's decision is unfavorable to the inmate, the inmate may appeal the decision to the superintendent of the relevant correctional facility. *Id*. The superintendent's decision is further appealable to the CORC which makes the final administrative decision on inmate grievances. *Id*.

Significantly, all three levels of administrative review must be exhausted before an inmate may seek § 1983 relief in federal court. *Id*. (citing cases).

Although an inmate's informal complaints may give prison officials substantive notice of the inmate's claim, the inmate, to avoid dismissal, must nevertheless "procedurally exhaust his available administrative remedies." *Macias*, 495 F.3d at 43 (citing *Johnson v. Testman*, 380 F.3d 691, 697-98 (2d Cir. 2004)). In certain situations, however, including where administrative remedies are not "'available' to prisoners seeking redress of their grievances," the plaintiff's failure to exhaust is justified. *Giano v. Goord*, 380 F.3d 670, 675 (2d Cir. 2004) (citing 42 U.S.C. § 1997e(a)).

Further, exhaustion of administrative remedies is an affirmative defense, rather than a jurisdictional requirement. *Jones v. Bock*, 549 U.S. 199, 212 (2007); *Johnson*, 380 F.3d at 695; *Giano*, 380 F.3d at 677. As such, if not raised as an affirmative defense, the defendants waive the failure to exhaust. *Johnson*, 380 F.3d at 695. Furthermore, as with any affirmative defense, the burden is on the defendants to establish that the plaintiff failed to exhaust. *Giano*, 380 F.3d at 675. Accordingly, in the instant case, Defendants have asserted Plaintiff's failure to exhaust as a defense, Chapman, Hillman, Hogancamp and Wagner Answer (Doc. No. 11) Fourth Affirmative Defense, ¶ 6; Cunningham and Estate of Gary Miles Answer (Doc. No. 27), Fourth Affirmative Defense, ¶ 6, and it is Defendants' burden to establish that Plaintiff failed to exhaust administrative remedies relative to his claim.

To meet their burden on the affirmative failure to exhaust defense, Defendants must first establish that administrative remedies were available, but that Plaintiff failed to exhaust them. Significantly, the parties do not dispute that DOCS provides a formal

procedure by which an inmate may seek administrative relief for grievances arising at DOCS's facilities and applicable to Plaintiff as of March 29, 2004, when Plaintiff alleges he was assaulted. Rather, Plaintiff asserts that after filing a grievance regarding the incident, he was threatened and beaten by "the Grievance Officer" who approached Plaintiff in his cell, and by correctional facility staff. Complaint at 5. Plaintiff further asserts that after the grievance was denied, he filed an appeal, but that the grievance was "forward[ed] back to Elmira C.F.," *id.*, and that Defendants have purposefully concealed all record of Plaintiff's attempt to grieve the incident. Plaintiff's Response to Murphy Declaration at 6-8. The evidence in the instant case establishes that Plaintiff failed to exhaust administrative remedies relative to his claim.

Specifically, Defendants point to the absence of any record of a grievance filed by Plaintiff, submitting in support the Materne and LaGrave Declarations. Materne explains that as Elmira's IGP Officer, he has access to all official grievance records generated and maintained in DOCS's ordinary course of business. Materne Declaration ¶ 1. All inmate grievances are required to be kept on file for at least the current year plus the previous four calendar years. *Id*. ¶ 4. Materne's review of Elmira's Grievance Office logs containing a list of all grievances and appeals filed for the previous five years revealed Plaintiff had never filed any grievance at Elmira relative to the alleged March 29, 2004 assault. *Id*. ¶ 5. Materne further states that although the Complaint asserts that DOCS staff at Elmira were "playing games" and "trying to cover up" the alleged assault, Materne always strictly complied with DOCS's grievance procedures and was unaware of any DOCS's personnel who failed to do likewise. *Id*. ¶ 6.

According to Materne, in March 2004, when Plaintiff alleges the grievance

relative to the March 29, 2004 incident was filed, the instant litigation was not pending and, as such, Defendants had no motive to destroy such grievance or prevent Plaintiff from commencing this action. Materne Declaration ¶ 7. Materne also explains that any grievance filed by an inmate is logged in three separate facility logs by three different prison staff members, including the inmate grievance clerk who is a "fellow inmate," making it "virtually impossible to lose a grievance or for an individual to 'play games' with inmate grievances," as Plaintiff asserts. *Id*. ¶ 8. Finally, that the unsigned inmate grievance complaint the Inspector General's Office received from Plaintiff is dated March 20, 2004, yet refers to incidents allegedly occurring both March 20 and 29, 2004, and has not been assigned a grievance code or title, suggests such grievance was never filed. *Id*. ¶ 9.

Similarly, LaGraves states that he reviewed DOCS's records at Collins Correctional Facility revealed Plaintiff's June 3, 2004 grievance, alleging the Elmira staff failed to respond to Plaintiff's March 20 and 29, 2004 grievance concerning the incident, and to Plaintiff's FOIL request. LaGraves Declaration ¶ 4. IGPS LaGraves found that Elmira IGP Supervisor Graubard had already responded to Plaintiff's FOIL request, and suggested that any additional requests by Plaintiffs should be directly submitted to Graubard in writing. *Id*. ¶ 5. DOCS's records further establish that Plaintiff never appealed the IGRC's decision denying Plaintiff's grievances, despite instructions for doing so having been provided Plaintiff in writing. *Id*. 6.

On this record, Defendants have met their burden of establishing Plaintiff failed to exhaust available administrative remedies. *See Cosme v. Furman*, 584 F.Supp.2d 610, 611 (W.D.N.Y. 2008) (granting summary judgment in favor of defendants where

12

evidence established inmate plaintiff made complaints to some prison officials regarding subject of § 1983 action, but did not follow required steps to formally file grievance with IGRC, and never obtained a final decision from CORC). *Compare Singh v. Goord*, 520 F.Supp.2d 487, 497 (S.D.N.Y. 2000) (holding evidence in record supporting plaintiff's assertion he never received decision on inmate grievance, as well as contrasting evidence supporting defendant's decision that plaintiff did receive decision, but failed to appeal it, prevented summary judgment in favor of defendant based on failure to exhaust administrative remedies). The burden thus shifts to Plaintiff to demonstrate a genuine triable issue of material fact exists as to whether he exhausted administrative remedies.

It is significant that Plaintiff submits no evidence calling into question any of the statements made by Materne or LaGraves. As such, Plaintiff's assertion that he exhausted administrative remedies is supported only by his bald assertion that he did so, Complaint at 5, and the alleged March 20, 2004 grievance, which is unsigned, has not been assigned a grievance number, and refers to events allegedly occurring on March 29, 2004. *See Johnston V. Maha*, 584 F.Supp.2d 612, 615 (W.D.N.Y. 2008) (granting summary judgment in favor of defendants where, although inmate plaintiff alleged defendants confiscated grievances, plaintiff presented no evidence, other than single unsubstantiated assertion, that defendants in any way interfered with his ability to file grievances, and defendants' evidence established that plaintiff had, in fact, filed numerous grievances without difficulty).

Nor does Plaintiff's assertion that he was threatened and beaten by the inmate grievance officer and correctional facility staff demonstrate a fact issue as to whether

DOCS inmate grievance procedures were truly available to Plaintiff. In particular, Plaintiff does not maintain that such threats and assaults, even if true, in any way caused Plaintiff not to pursue his administrative remedies with regard to the instant claim. Rather, Plaintiff alleges that despite such threats and physical assaults, he nevertheless did appeal the initial decision on the June 3, 2004 grievance asserting Plaintiff had received no responses to the March 20 and 29, 2004 grievance and the subsequent FOIL request. Accordingly, the alleged threats and assaults did not prevent Plaintiff from pursuing the administrative grievance process. *See Macias*, 495 F.3d at 45 (observing that even if the plaintiff could establish he was threatened not to file inmate grievance complaints, such threats were relevant only to events occurring after the time such threats were made).

Insofar as Plaintiff asserts in the June 3, 2004 grievance that he never received any response to the March 20 and 29, 2004 grievance, such statement is inconsistent with Plaintiff's allegation, Complaint at 5, that the relevant grievance was denied, and that Plaintiff filed an appeal of that denial. In opposition to Defendants' motion, Plaintiff makes no attempt to explain these inconsistent statements. Moreover, as to the claims first asserted in Plaintiff's Declaration submitted in support of Plaintiff's summary judgment motion, including unlawful SHU confinement, false misbehavior reports, and improper disciplinary hearing procedures, assuming, *arguendo*, those claims are even properly before the court, the record is devoid of any evidence, including any statement by Plaintiff, that Plaintiff made any attempt to exhaust administrative remedies as to such claims. Plaintiff's Declaration ¶¶ 1-5.

Accordingly, based on this record, no reasonable jury could find Plaintiff's

evidence sufficient to raise a genuine issue of fact as to whether Plaintiff exhausted available administrative remedies.  *Amnesty America*, 361 F.3d at 122-23.  Summary judgment based on failure to exhaust administrative remedies is therefore GRANTED in favor of Defendants, and DENIED as to Plaintiff.

## **CONCLUSION**

Based on the foregoing, Plaintiff's motion (Doc. No. 50) is DENIED; Defendants' motion (Doc. No. 51) is GRANTED.  The Clerk of the Court is directed to close the file.

SO ORDERED.

/s/ *Leslie G. Foschio*

———————————————
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      July 20 , 2009
            Buffalo, New York